865 So.2d 280 (2004)
STATE of Louisiana, Appellee
v.
Tommy L. LINGEFELT, Sr., Appellant.
No. 38,038-KA.
Court of Appeal of Louisiana, Second Circuit.
January 28, 2004.
Bertha M. Hillman, Louisiana Appellate Project, Thibodaux, for Appellant.
William R. Coenen, Jr., District Attorney, Penny Douciere, K. Douglas Wheeler, Assistant District Attorneys, for Appellee.
Before GASKINS, DREW and MOORE, JJ.
*281 GASKINS, J.
The defendant, Tommy L. Lingefelt, Sr., was charged with the offenses of: (1) manufacture of methamphetamine; (2) conspiracy to manufacture methamphetamine; and (3) possession of marijuana with intent to distribute. A jury found him guilty as charged on the first two counts, and guilty of the lesser and included offense of simple possession of marijuana on the third count. On the first count, the court imposed a sentence of 22 years at hard labor without benefits plus a fine of $50,000. On the second count, the court imposed a sentence of 10 years at hard labor, with five of those years to run consecutively with the sentence on count one. For the possession of marijuana, the court imposed a sentence of six months to be served concurrently with the other two sentences. The defendant filed a timely motion for reconsideration of sentence, which was denied. He now appeals.

FACTS
The defendant manufactured methamphetamine with his sons and other individuals at two residences in Richland Parish. He was arrested when the authorities investigated his son, James Thomas, and an associate, James Thornhill, following their purchase of items used in the manufacturing process. The police searched Thornhill's vehicle and found the items, as well as methamphetamine and marijuana on Thornhill.
Based on details learned from that investigation, including information that the defendant had sent Thomas and Thornhill to purchase the materials, the police executed search warrants at the residences where the defendant and one of his sons lived. The search disclosed items needed to manufacture and use methamphetamine. They included an anhydrous ammonia tank and snorting straws, as well as two holes in the ground in which to hide buckets. Starting fluid and pseudoephedrine pills were found in a bucket in the defendant's bedroom, as were coffee filters. Five glass jars containing pseudoephedrine tablet residue were found in or near the buckets. Starting fluid and a container holding methamphetamine were found in the living room of the defendant's house. Two wooden spoons, used to mix pseudoephedrine and lithium, were also found inside the defendant's bedroom closet. The police found lithium batteries and recovered marijuana and marijuana seeds. The marijuana found in the defendant's bedroom weighed 122 grams.
The defendant made an out-of-court statement in which he admitted possession of the items by claiming he was holding them for someone else to cook. However, Thornhill testified at trial that he visited the defendant once or twice a week during the 18 months before his arrest, and the defendant kept the anhydrous ammonia tank to use in cooking methamphetamine. Thornhill explained that the defendant cooked methamphetamine at his trailer and at his house. He kept the materials for cooking in two buckets that he hid in a hole in the ground. The defendant usually cooked batches using 800 pseudoephedrine pills. Thornhill had seen the defendant going through the cooking process during the four days prior to his arrest. Thornhill also testified that on the day of their arrests, he and James Thomas went to buy the other items needed for the manufacturing process for the defendant.
William Henley, another associate of the defendant, testified at trial that he had seen the defendant cooking methamphetamine two to three times per week during the 18 months before the arrests. He also testified that on the day of the arrest, the defendant had already begun to soak pseudoephedrine pills, the first step in the *282 cooking process, and thus was "in the manufacturing process."

JURY INSTRUCTION
The defendant argues that the trial court erred in denying his objection to the state's proposed jury instruction.
During voir dire, trial and final argument, defense counsel maintained a theme that the defendant could only be found guilty of attempted manufacture. The state requested a special jury charge to define certain "technical" terms included in the statutory definition of manufacturing. The proposed instruction used the Webster's Collegiate Dictionary's definitions of "preparation," "compound," and "process." The court gave the requested special instruction to the jury.
The defense objected that the definition of "manufacture" meant a finished product had been achieved, rather than including the steps in the process. However, the defense's desired definition would not be in accord with the statute involved. The statutory definition of manufacture, La. R.S. 40:961(24), does not use the term "finished product"; it does use the phrase "production, preparation, propagation, compounding, or processing." Nor does the definition of production, La. R.S. 40:961(34), use the term "finished product."
La. C. Cr. P. art. 807 provides that the state and the defendant have the right to submit special charges for the jury. A requested special charge shall be given if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. The jurisprudence also requires that a requested instruction must be supported by the evidence. State v. Craig, 95-2499 (La.5/20/97), 699 So.2d 865, 869, cert. denied, 522 U.S. 935, 118 S.Ct. 343, 139 L.Ed.2d 266 (1997).
The charge as given was accurate. As given to the jury, the instruction tracked the statutory language and came directly from a recognized dictionary. It was pertinent and supported by the evidence, including the facts that the defendant had started to soak his pseudoephedrine tablets and had procured other supplies to be used in the cooking process. There is no explanation of the defendant's claims that the instruction was overly broad or prejudicial.
This assignment of error lacks merit.

EXCESSIVE SENTENCE
The defendant asserts that the sentences imposed were excessive. He argues that the trial court did not give adequate consideration to all the sentencing guidelines in that only three of the 20 factors listed in La. C. Cr. P. art. 894.1 applied to him.
Prior to imposing sentence, the trial court reviewed a presentence investigation (PSI) report. The defendant was 51 years old at the time of sentencing. After reciting the evidence presented at trial, the court discussed the defendant's criminal history, which included convictions for reckless operation of a vehicle, speeding, resisting an officer, disturbing the peace, hit and run, simple burglary and DWI. Probation on the simple burglary was revoked when the defendant was convicted of possession of marijuana with intent to distribute. The court also reviewed his social history. He was the ninth of 13 children; his parents worked at various jobs, including farming. The defendant quit school in the seventh grade, but obtained a GED and a small engine certificate. He worked for a tree service and a gas station.
The defendant had three children from a marriage which ended in divorce in 1974. He married again, had two more children, and divorced in 1986. He lived with a *283 third woman from 1987 until 1999 and had two more children. All seven of his children were adults at the time of sentencing.
Information from the Richland Parish Sheriff's Department indicated the defendant had been manufacturing methamphetamine for approximately 20 years. He involved his family in the drug business and even bragged about how he had taught them the business. He had been heard in jail telling fellow inmates that when he got out he would start cooking again because it was easy money.
The court then reviewed a letter from the defendant and listened to him tell an elaborate story of cooking methamphetamine undercover at the request of the police, of his efforts to help people get off methamphetamine, and of the police's efforts to set him up. He denied having any prior dealings with crystal methamphetamine at any time in his life. He said the police were after him and that everything was a lie. He also disputed portions of his criminal record. The court noted that two of defendant's sons had pled guilty to drug charges in connection with this case.
The court found a high probability that the defendant would commit another crime if granted probation. He was in need of lengthy correctional treatment in a custodial environment. A lesser sentence would deprecate the seriousness of the offense. The court believed manufacture and conspiracy to manufacture methamphetamine were very serious offenses because the drug was ruining the lives of people in the parish and within the judicial district. The court found the defendant had been persistently involved in criminal activity. The defendant was a leader and organizer of his family and other young people in conspiring to manufacture and in manufacturing methamphetamine. The defendant had made money from his ongoing drug activities which threatened serious harm in the parish. The court felt the defendant contemplated or should have contemplated that his criminal conduct would cause or threaten serious harm to those who would be taking the drugs and learning how to manufacture them. There was no excuse or justification for the defendant's criminal conduct. Imprisonment would not entail excessive hardship on his dependents.
The jurisprudence holds that where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982).
A trial court has broad discretion to sentence within the statutory limits. State v. Mandosia, 36,827 (La.App.2d Cir.4/9/03), 842 So.2d 1252. Absent a showing of manifest abuse of that discretion an appellate court may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158.
Here, the evidence demonstrated that the defendant had a history of involvement in the drug trade, including a prior conviction for possession with intent. The evidence showed that he had cooked methamphetamine many times, in fairly large batches, and he intended to do so again upon his release from confinement. He engaged in these activities for the economic benefit, without regard to the harm caused to those he supplied with drugs. He involved several young persons in his enterprise, including family members who now have convictions due to their association with him. Although he possessed a relatively large quantity of marijuana, he garnered a relatively light sentence for it. The sentences are lawful and are affirmed.
*284 This assignment of error is meritless.[1]

CONCLUSION
The defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] The defendant filed a pro se brief in which he alleged that his Fourth Amendment rights were violated because the searches were conducted without probable cause. This claim is waived when it is not raised prior to trial. La. C. Cr. P. art. 703. However, we note that the searches were conducted pursuant to warrants and there was testimony that prior to the warrants being issued, the police were given information that the drug-related offenses occurred on the defendant's property.