960 So.2d 1199 (2007)
STATE of Louisiana, Appellee
v.
Derrick WILLIAMS, Appellant.
No. 42,119-KA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2007.
*1201 William J. Franklin, for Appellant.
J. Schuyler Marvin, District Attorney, John M. Lawrence, Edward C. Jacobs, Assistant District Attorney, for Appellee.
Before WILLIAMS, CARAWAY and PEATROSS, JJ.
WILLIAMS, J.
A Bossier Parish grand jury returned an indictment charging the defendant, Derrick Williams, with the second degree murder of Calvin Allen, a violation of LSA-R.S. 14:30.1. The defendant pled guilty to the reduced charge of attempted second degree murder and was sentenced to serve 50 years in prison at hard labor with credit for time served. For the reasons that follow, we affirm the defendant's conviction and sentence.

FACTS
On January 4, 2004, Brandy Carter ("Brandy") invited guests to her apartment. Among the guests was the victim, Calvin Allen ("Allen"), who had come to the apartment to visit Brandy's sister, Monique Carter ("Monique"). Allen was sitting next to Monique on the sofa. Allen stood up to start a movie, and as he was about to sit back down, approximately four gunshots were fired through a window. Allen sustained a gunshot wound to the back and later died as a result of the wound.
Monique told law enforcement officers that the defendant, her former boyfriend, had called her twice before the shooting and threatened to kill her if he saw her with anyone else. Law enforcement officers located the defendant who, after being Mirandized, confessed to the shooting. In doing so, the defendant told the officers that he and Monique were dating and having problems. He stated that he was looking through the back window of Brandy's apartment and became angry when he saw Monique with another man. He admitted that he fired the shots, but he denied knowing that he had actually shot someone.
The Bossier Parish grand jury subsequently indicted the defendant for second degree murder. The state and the defendant reached a plea agreement wherein the defendant agreed to plead guilty to the responsive charge of attempted second degree murder. The state agreed to allow the trial court to sentence the defendant after a pre-sentence investigation ("PSI"). The state also dismissed other pending charges and agreed not to file a habitual offender bill against the defendant.
At a hearing on January 11, 2006, the trial court informed the defendant that it would most likely impose the maximum sentence of 50 years due to the circumstances of this case unless the PSI report provided mitigating information regarding his personal history. Because the defendant would not absolutely concede to the state's factual basis, instead saying, "I guess so, that's what they say," the trial court refused to accept the guilty plea on that date.[1]
At a hearing held on January 23, 2006, the defendant conceded to the state's factual basis and pleaded guilty to attempted second degree murder. The trial court *1202 ordered a PSI and subsequently sentenced the defendant to serve 50 years in prison at hard labor with credit for time served.

DISCUSSION
In his sole assignment of error, the defendant argues that his sentence is excessive for him and this offense. He contends the trial court failed to consider his youthful age and the impact that the long incarceration would have on his family. According to the defendant, his actions were more negligent than intentional because the trial court characterized it as "carelessness." Therefore, the defendant contends his actions were more consistent with manslaughter than second degree murder. Based upon that assumption, the defendant argues that he did not truly receive an actual benefit in regard to the reduction of potential exposure to confinement because manslaughter carries a maximum sentence of 40 years, while attempted second degree murder carries a maximum sentence of 50 years.
The defendant was sentenced on April 4, 2006, and defense counsel did not file a motion to reconsider sentence until October 6, 2006. Hence, the defendant's motion to reconsider sentence was not timely filed within 30 days following the imposition of sentence.
When a defendant fails to timely file a LSA-C.Cr.P. art. 881.1 motion to reconsider sentence, the appellate court's review is limited to the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. Jones, 41,449 (La.App.2d Cir.9/20/06), 940 So.2d 61; State v. Duncan, 30,453 (La.App.2d Cir.2/25/98), 707 So.2d 164.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La. App.2d Cir.1/28/04), 865 So.2d 284, writs denied, XXXX-XXXX (La.3/11/05), 896 So.2d 57, 2004-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App.2d Cir.4/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.6/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385.
Second, a sentence violates Art. 1, § 20 of the Louisiana Constitution if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, *1203 it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La. 1992); State v. Bradford, 29,519 (La. App.2d Cir. 4/2/97), 691 So.2d 864.
A substantial advantage obtained by means of a plea bargain, such as a reduction of charge where the evidence shows that the defendant was guilty of a more serious offense, is a legitimate consideration in sentencing. State v. Ross, 35,552 (La.App.2d Cir.2/27/02), 811 So.2d 176, citing State v. Smack, 425 So.2d 737 (La.1983). Where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense. State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430.
A trial court has broad discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, an appellate court may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. June, 38,440 (La. App.2d Cir.5/12/04), 873 So.2d 939; State v. Lingefelt, 38,038 (La.App.2d Cir.1/28/04), 865 So.2d 280, writ denied, XXXX-XXXX (La.9/24/04), 882 So.2d 1165.
In the instant case, during the sentencing hearing, the trial court noted that this crime stemmed from the defendant's jealousy over his former girlfriend being with another man. The defendant went to the residence armed with a gun and fired the gun into the apartment, killing a victim "who had no idea what was coming."
The trial court also referred to information contained in the PSI report, noting that this was the defendant's second felony conviction. The trial court further noted the age of the victim, who was 24 years old at the time of his death, and the victim impact statement of the victim's mother. The trial court stated that there was no way to bring back the victim's life and reminded the defendant that he had previously been informed that the court would most likely impose the maximum sentence. The trial court noted some of the defendant's criminal history from the PSI report and stated that his criminal history indicated a definite pattern of violence culminating in the commission of this murder. The trial court stated that it was imposing the maximum sentence because of the need to protect the public, stating:
Anybody that did what you did through carelessness, anybody firing a gun into a dwelling where they know somebody is living you have got to know that the chances are great that somebody is going to be hurt or possibly killed, and that's exactly what happened here. And we cannot, Mr. Williams, have someone that has those propensities roaming the streets of the United States.
Thus, a review of the record indicates that the trial court was cognizant of the sentencing considerations of LSA-C.Cr.P. art. 894.1.
Further, the PSI report revealed that the defendant had a criminal history of violent offenses against Monique and others. In 2002, the defendant pleaded guilty to one count of aggravated assault, one count of simple assault, and one count of harassing phone calls with regard to Monique. He was also arrested for stalking along with the present charges, but the stalking charge was dismissed pursuant to his plea agreement. In 2003, the defendant pleaded guilty to attempted unauthorized entry of an inhabited dwelling and simple battery with regard to Monique for an incident that occurred on January 27, 2003. Out of that same incident, the defendant was also arrested for possession of *1204 Schedule II CDS with intent to distribute, but he pleaded guilty to the reduced charge of attempted possession of cocaine.
When the defendant was arrested for the present offense, he was also charged with second degree battery with regard to an incident that occurred on August 14, 2003 involving Monique. The offense report from that date indicated that Monique had several bruises and lacerations on her forehead and neck; that her right eye was swollen shut, and that witnesses observed the defendant hitting, kicking and dragging her on the ground while she tried to resist. While incarcerated for the present offense, the defendant was also charged with another count of second degree battery for hitting an inmate several times in the eye with his fist; the inmate was subsequently treated for a detached retina and broken bones around the injured eye. Further, when the defendant confessed to the present crimes, the detectives interviewing him indicated that the defendant appeared to have the opinion that the whole situation was the fault of Monique.
Pursuant to LSA-R.S. 14:27(D)(1)(a) and 14:30.1, the sentencing range for attempted second degree murder is imprisonment at hard labor for not less than 10 years nor more than 50 years without benefit of parole, probation, or suspension of sentence. The defendant's sentence of 50 years for attempted second degree murder is not grossly disproportionate to the seriousness of the offense, nor does it constitute needless infliction of pain and suffering. The defendant has an extensive criminal history of physical violence towards his former girlfriend and he actually killed a person out of jealousy over her. The defendant would have faced a mandatory sentence of life imprisonment without benefit of parole, probation, or suspension of sentence if he had been convicted of the original charge of second degree murder. Further, the defendant was a second-felony offender. In the light of these circumstances, a 50-year sentence does not shock the sense of justice. Thus, the trial court did not abuse its discretion, and the sentence is not constitutionally excessive. This assignment is therefore without merit.

ERROR PATENT
We also examined the record for errors patent in accordance with LSA-C.Cr.P. art. 920. A review of the record herein reveals one error patent.
The sentence range for attempted second degree murder is imprisonment at hard labor for not less than 10 years nor more than 50 years without benefit of parole, probation or suspension of sentence, pursuant to LSA-R.S. 14:27(D)(1)(a) and 14:30.1. The defendant was sentenced to serve 50 years in prison at hard labor with credit for time served. The court did not state that the sentence was to be served without benefit of parole, probation or suspension of sentence. The trial court's failure to state that the sentence is to be served without benefits will be corrected automatically by operation of LSA-R.S. 15:301.1.[2]See State v. Williams, XXXX-XXXX *1205 (La.11/28/01), 800 So.2d 790; State v. Klasek, 37,114 (La.App.2d Cir.4/11/03), 843 So.2d 646, writ denied, XXXX-XXXX (La.12/12/03), 860 So.2d 1149.

CONCLUSION
For the foregoing reasons, we affirm the defendant's conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The state set forth the factual basis as follows:

Your Honor, on January the 4th of 2004, in the early morning hours at the Riverwood Apartments, 2211 Riverwood Circle, Derrick Williams fired approximately four shots through the window with a .38 caliber pistol. People were present inside that residence. Monique Carter was present there. A Calvin Allen was present. Mr. Allen later died of his gunshot wounds. After the shooting, Mr. Williams fled the scene. He was arrested later and admitted to the police shooting into the window. All this led to the charges against Mr. Williams.
[2] LSA-R.S. 15:301.1 provides in pertinent part:

A. When a criminal statute requires that all or a portion of a sentence imposed for a violation of that statute be served without benefit of probation, parole, or suspension of sentence, each sentence which is imposed under the provisions of that statute shall be deemed to contain the provisions relating to the service of that sentence without benefit of probation, parole, or suspension of sentence. The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.