DREW, J.
hZephan T. Givens killed Demetriac Trent by shooting him in the head with a pistol. Givens was initially indicted for first degree murder, then a superseding indictment charged him with second degree murder. He pled guilty to the crime of manslaughter (La. R.S. 14:31), with an agreement that the state would not prosecute him as a habitual offender. With thoughtful and thorough reasons, the trial court sentenced him to the maximum sentence of 40 years at hard labor. A timely motion for reconsideration of sentence was denied.
He now appeals his sentence. We affirm.
FACTS
A Monroe Police Department officer was dispatched to the home of Demetriac Trent on November 30, 2004, on a welfare concern call initiated by a friend. Officers arriving on the scene entered the home and found Trent’s lifeless body, -with a gunshot wound to his head. EMTs found no signs of life.
Detectives assigned to the case learned that the victim’s cars were missing and issued alerts for the vehicles. One vehicle was found at a repair shop and the other was discovered at a vacant residence.
In speaking with one of the victim’s friends, detectives learned that the victim was homosexual but was very secretive about his sexual preference. According to the friend, the victim preferred young black males who were “thugs” and did not appear to be homosexual. No solid leads were uncovered.
| ¡Almost one year later, on September 20, 2005, this defendant was incarcerated for an unrelated crime of armed robbery. A fellow inmate wanting assistance on a DUI charge was his cellmate. Defendant told the informant that he shot the victim because of his unwanted sexual advances, and that the gun used in the armed robbery was the same one used to kill Trent. This fact was eventually confirmed by firearms identification testing.
Detectives interviewed the defendant’s brothers (Quentin and Aquila).
Quentin revealed that the victim was homosexual and his brother confessed to committing the crime and acting alone.
Aquila stated that:
• the defendant admitted shooting the victim over a misunderstanding related to money and/or an alternate sexual lifestyle;
• his brother had been embarrassed by the victim at the defendant’s workplace when the victim made remarks that led people to believe the defendant was involved in homosexual activity;
• the defendant was alone in the house with the victim while Quentin and his girlfriend waited outside in the girlfriend’s vehicle;
*453 • he (Quentin) went inside the house after hearing a shot fired; and
• he and the defendant took the victim’s vehicle, rode around for awhile, and abandoned it, fearing that the shooting had been discovered.
The defendant confessed to the shooting, indicating it was in self-defense. He further stated that:
• the victim had angered him by publicly making sexual comments to him;
• the victim made sexual advances toward him;
• he feared for his manhood and his safety;
|s* he pulled a revolver from his pants and fired one shot at the victim;
• he took the victim’s vehicle and rode to Quentin’s residence, where Quentin and his girlfriend joined him; and
• they disposed of the vehicle.
The theory of the crime, as determined by detectives, is that:
• the victim was home alone, preparing for work, when the defendant arrived;
• a pornographic movie was placed in the DVD player;
• the defendant initially watched the movie, then moved to the kitchen;
• the victim was kneeling execution style, when shot near the eye;
• Quentin accompanied the defendant to take part in a planned robbery; and
• after the shot, he helped remove his brother’s fingerprints from the home.
DISCUSSION
The defendant argues that:
• his sentence is excessive in that he is a youthful first felony offender;
• there were questions of fact and law which led to the manslaughter plea;
• he is a good candidate for rehabilitation; and
• he accepts responsibility for the crime and wants to make amends.
The state counters that the defendant has not shown the potential for rehabilitation but has proven to be a very violent person and a serious danger to society, well deserving of a maximum sentence.
Our law on reviewing the exces-siveness of sentences is well settled.[1]
*454 |4The record reveals that the trial court duly considered the appropriate factors in determining defendant’s sentence. The court was familiar with |fithe presentence investigation (PSI), which included a victim’s impact statement and defendant’s social and criminal history. The trial court found that:
• the 24-year-old defendant, considered a first felony offender, committed a second violent crime (armed robbery) shortly after the instant crime;
• the senseless crime caused great hardship to the victim’s family;
• the defendant’s version of events was not believable;
• the defendant substantially benefited from the plea bargain;
• the defendant would likely commit another crime; and
• a lesser sentence would deprecate the seriousness of the crime.
During the sentencing hearing, the victim’s oldest sister indicated that:
• the victim’s mother was hospitalized at the time of her son’s death;
• after the mother learned of the killing, she never spoke again;
• the victim was part of a close-knit family and was much missed;
• the family requested that the court take the family’s pain and suffering under consideration when determining the defendant’s sentence.
In an impact statement provided to the probation and parole officer who prepared the PSI, the victim’s brother also discussed the impact the crime had on the victim’s mother and asked that the family receive justice.
We find no error in the sentence. This defendant has a propensity for violent crimes. The crime of manslaughter does *455 not adequately describe Ms conduct in violently executing tMs victim. Accordingly, imposition of the 1(¡maximum sentence was within the court’s discretion. We have upheld maximum sentences in similar situations.[2]
This sentence is neither grossly out of proportion to the seriousness of the offense, nor a needless infliction of pain, nor is it shocking to the conscience.
DECREE
The defendant’s conviction and sentence are AFFIRMED.

. The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267; writ denied, 2008-2697 (La.9/18/09), 17 So.3d 388. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir. 12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351.
A trial court has broad discretion to sentence within the statutory limits. Where a defendant has pled guilty to an offense which does not adequately describe his conduct or *454 has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense. State v. Germany, 43,239 (La.App.2d Cir.4/30/08), 981 So.2d 792, State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. Absent a showing of manifest abuse of that discretion we may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. June, 38,440 (La.App.2d Cir.5/12/04), 873 So.2d 939; State v. Lingefelt, 38,038 (La.App.2d Cir. 1/28/04), 865 So.2d 280, writ denied, 2004-0597 (La.9/24/04), 882 So.2d 1165.
On the second prong of the excessiveness test, the court must determine whether a sentence violates La. Const. art. I, § 20. A sentence violates La. Const. Art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App.2d Cir. 1/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto, 2007-2031 (La.2/15/08), 974 So.2d 665; State v. McKinney, 43,061 (La.App.2d Cir.2/13/08), 976 So.2d 802; State v. Woods, 41,420 (La.App.2d Cir. 11/1/06), 942 So.2d 658, writs denied, 2006-2768, 2006-2781, (La.6/22/07), 959 So.2d 494. However, in cases where the defendant has pled guilty to an offense which does not adequately describe his conduct, the general rule does not apply and the trial court has great discretion in imposing the maximum sentence possible for the pled offense. This is particularly true in cases where a significant reduction in potential exposure to confinement has been obtained through a plea bargain and the offense involves violence upon a victim. State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430.

. In State v. Jones, 41,628 (La.App.2d Cir.1/24/07), 948 So.2d 356, the defendant received a maximum sentence for manslaughter, a crime which we held did not adequately describe the defendant’s conduct in killing the victim then later attempting to cover up the crime.
In State v. Hudson, 33,357 (La.App.2d Cir.5/10/00), 760 So.2d 591, a 25-year-old man was given 40 years for killing a male acquaintance who made a sexual overture to him. He had no prior criminal history.