GASKINS, J.
|2The defendant, Kimberly Nicole Key, was initially indicted for first degree murder; however, the charge was later amended to second degree murder. Pursuant to a plea bargain, the defendant pled guilty to the crime of manslaughter. The trial court sentenced Ms. Key to the maximum sentence of 40 years at hard labor. The defendant appeals, urging that her sentence was excessive. We affirm.
*580 FACTS
On March 3, 2003, Bossier City police officers were dispatched to the Mason Motel to assist the fire department with an unresponsive white male. The victim was lying on the floor of a motel room, covered in blood and wearing only his socks. He had been severely beaten about the head and face with a wooden lamp which was found on the floor. The victim was transported to LSU Medical Center, where he was later pronounced dead. DNA evidence was collected at the crime scene. The victim’s wallet was found in the motel room, but it contained neither money nor credit cards.
According to the motel manager, the victim had been coming to the motel two or three times a week for more than a year, usually with a young black woman who appeared to be about 25 years old. He would stay each time for only a few hours. The motel manager did not know the victim’s name because he always paid in cash and was never required to fill out any paperwork. Eventually, the victim was identified as 75-year-old Henry Chaisson.
On the day of the incident, the victim came to the motel between 3:30 p.m. and 4:00 p.m. to rent a room for two hours. The motel manager did not see anyone with the victim. At about 5:30 p.m., the motel manager went to see if the victim had left. He opened the door to the room and found the victim lying on the floor covered in blood.
The motel manager provided the police with a surveillance tape of the property and told the officers that the victim’s vehicle was missing. The surveillance tape showed the victim parking his vehicle near the motel room and entering the room along with a black female at about 3:50 p.m. At about 4:08 p.m., the surveillance tape showed the woman leaving the room and then driving away from the motel alone in the victim’s automobile. From |athe time she left the motel room to the time that the victim was found, no one entered or exited the motel room. Shortly after his murder, three attempts were made to use the victim’s Visa card at an ATM machine.
In July 2008, a DNA profile matched the defendant to the crime scene. She was then contacted by the police. Post-Miranda warning, she confessed that she killed the victim by repeatedly beating him on the head with a lamp and then robbed him of his money, credit card and vehicle.
On July 21, 2008, a Bossier Parish grand jury indicted the defendant for first degree murder; however, the prosecutor subsequently amended the charge to second degree murder. On April 20, 2010, pursuant to a plea agreement, the defendant pled guilty to a reduced charge of manslaughter with the understanding that the trial court would order a presentence investigation (PSI) report.
On June 22, 2010, the defendant was sentenced to 40 years at hard labor, the maximum possible sentence for manslaughter. The trial court articulated several factors it considered in sentencing the 24-year-old defendant. Among them were the following: (1) although the defendant had no other felony convictions, she had other instances of assaultive behavior as she had been previously charged with simple battery of a 13-year-old female and resisting arrest; (2) the particularly heinous nature of the maimer in which the victim was murdered; (3) the case involved an elderly victim; (4) after striking the victim several times, the defendant robbed him of his credit cards, wallet and left the scene of the crime in his vehicle; (5) the defendant showed no signs of remorse for taking the victim’s life and made no mention of an apology to the victim’s family; *581 and (6) after consideration of all the factors under La. C. Cr. P. art. 894.1, no mitigating factors were present that would lead the court to not sentence the defendant to the maximum sentence allowable under the manslaughter statute.
A timely motion to reconsider sentence was filed. In the motion, the defendant argued that the trial court’s sentence was excessive because it failed to consider the following mitigating factors before imposing sentence: (1) the fact that the defendant was only 17 years old at the time of the offense; (2) that there was no gun or illegal weapon used in committing the 14offense; (3) and that the defendant is capable of being rehabilitated without the necessity of a 40-year sentence. The trial court denied the motion.
The defendant appealed her sentence as excessive.
LAW
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267, writ denied, 2008-2697 (La.9/18/09), 17 So.3d 388. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351.
As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto, 2007-2031 (La.2/15/08), 974 So.2d 665; State v. McKinney, 43,061 (La.App.2d Cir.2/13/08), 976 So.2d 802; State v. Woods, 41,420 (La.App.2d Cir.11/1/06), 942 So.2d 658, writs denied, 2006-2768, 2006-2781 (La.6/22/07), 959 So.2d 494.
 A trial court has broad discretion to sentence within the statutory limits. Where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in |5potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense. State v. Germany, 43,239 (La.App.2d Cir.4/30/08), 981 So.2d 792, State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. This is particularly true in cases where a significant reduction in potential exposure to confinement has been obtained through a plea bargain and the offense involves violence upon a victim. State v. Black, supra.
On the second prong of the ex-cessiveness test, the court must determine whether a sentence violates La. Const, art. *582 I, § 20. A sentence violates La. Const. Art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.l/14/0S), 839 So.2d 1; State v. Dorthey, 628 So.2d 1276 (La. 1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La. App.2d Cir.4/2/97), 691 So.2d 864.
Absent a showing of manifest abuse of the trial court’s sentencing discretion, this court may not set aside a sentence as excessive. State v. Guzman, 1999-1528, 1999-1753 (La.5/16/00), 769 So.2d 1158; State v. June, 38,440 (La. App.2d Cir.5/12/04), 873 So.2d 939; State v. Lingefelt, 38,038 (La.App.2d Cir.1/28/04), 865 So.2d 280, writ denied, 2004-0597 (La.9/24/04), 882 So.2d 1165.
La. R.S. 14:31(B) provides, in pertinent part: “Whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years.”
DISCUSSION
The defendant argues that the trial court erred because it did not consider mitigating factors before imposing sentence. This argument has no merit; the sentencing transcript reveals that the trial court duly considered the appropriate mitigating and aggravating factors in determining the | ^defendant's sentence. The trial court was intimately familiar with the PSI report and the defendant’s social and criminal history. Before sentencing, the court allowed the defendant, her mother, and her sister to make pleas for leniency.
Ultimately, the defendant’s central complaint boils down to the weight the trial court placed on the mitigating factors. But the trial court was not required to place any particular weight on the mitigating facts; it only had to consider them. See Shumaker, swpra. The sentencing transcript clearly reveals that the trial court fulfilled its obligation.
Moreover, the defendant’s argument that her sentence is excessive because she is not a worst offender and did not commit the worst offense is unconvincing. The crime of manslaughter does not adequately describe the defendant’s conduct in beating an elderly victim to death with a lamp and then proceeding to rob him of his money, credit card and vehicle. This Court has upheld maximum sentences in similar situations. See State v. Jones, 41,-628 (La.App.2d Cir.1/24/07), 948 So.2d 356 (where the defendant received a maximum sentence for manslaughter, a crime which this court held did not adequately describe the defendant’s conduct in shooting the victim in the head over a debt). Moreover, the plea agreement allowed the defendant to avoid potential exposure to a mandatory life sentence which she would have faced if convicted of second degree murder. The defendant’s sentence is neither grossly out of proportion to the seriousness of the offense, nor a needless infliction of pain, nor is it shocking to the conscience. The imposition of the maximum sentence was within the trial court’s discretion.
This assignment of error has no merit.
CONCLUSION
The defendant’s conviction and sentence are affirmed.
AFFIRMED.