Judgment rendered November 15, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,304-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

JOSEPH SIMPSON                              Appellant

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 19-CR-30270

Honorable Amy Burford McCartney, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Sherry Watters

CHARLES BLAYLOCK ADAMS                 Counsel for Appellee
District Attorney

EDWIN BLEWER
RHYS E. BURGESS
Assistant District Attorneys

* * * * *

Before THOMPSON, ROBINSON, and MARCOTTE, JJ.

**ROBINSON, J.**

Simpson was convicted as charged by a unanimous jury of theft of property having a value of more than $5,000, but less than $25,000. He was adjudicated a third-felony offender and sentenced to 10 years of imprisonment without benefit of probation or suspension of sentence. He appeals his sentence, claiming it is excessive.

We affirm his conviction, habitual offender adjudication, and sentence. We also remand this matter to the trial court to correct the minutes and the Uniform Sentencing Commitment Order ("USCO").

## FACTS

Close to midnight on October 30, 2017, Joseph Simpson and his 17-year-old "mentee" stole a truck, an attached trailer, and a tractor and bush hog that were on the trailer from Register Oilfield Services in the village of Stanley in DeSoto Parish. A few hours later, an officer from the Nacogdoches County Sheriff's Office made a traffic stop of the truck and trailer in Nacogdoches, Texas. Simpson and his mentee were subsequently taken into custody.

On July 17, 2019, Simpson was charged by bill of information with theft of a motor vehicle (over $1,000) in violation of La. R.S. 14:67.26(A)(1) and 14:67.26(C)(1). The motor vehicle listed in the bill was a Chevy Silverado 2500 flatbed work truck.

On May 4, 2021, the bill of information was amended to charge Simpson with theft (over $25,000) in violation of La. R.S. 14:67(B)(1). A 2001 Chevy Silverado 2500, a 20-foot flatbed trailer, a Kubota M4800 tractor, and a bush hog were the items that Simpson was accused of stealing.

*Trial*

Jury selection began in this matter on March 21, 2022. The minutes reflect that by a joint agreement, the State again amended the bill of information.[1] When the clerk read the bill of information to the jury, she stated that the bill of information charged that "on or about October 30, 2017, in the Parish of DeSoto, Joseph Simpson committed the offense of La. R.S. 14:67(B)(2), theft by the misappropriation or taking of a 2001 Chevy Silverado 2500, a twenty foot Platinum trailer, a Kubota M4800 tractor, and a bush hog with a value of [$5,000] or more but less than [$25,000]." The jury began hearing evidence on March 22.

Detective Mike Armstrong with the DeSoto Parish Sheriff's Office ("DPSO") was the lead investigator on the case. He was informed that the Nacogdoches County Sheriff's Office had stopped a truck pulling a trailer in Nacogdoches, Texas, and suspected the vehicles were stolen. DPSO deputies then contacted Register Oilfield Services and it was determined the vehicles were indeed stolen. Armstrong traveled to Nacogdoches to interview Simpson and his mentee. An audio recording of Simpson's interview was played for the jury.

Brian Register owns Register Oilfield Services. His company maintains leases for gas and oil wells. He testified that upon learning of the theft, he went to his place of business and found that a back gate was open, and some of his equipment was missing.

---

[1]   The State notes in its brief that before trial, the State and defense counsel agreed to stipulate that the value of the stolen property was $5,000 - $25,000 under La. R.S. 14:67(B)(2).

2

From photographs admitted into evidence, Register identified his Chevrolet truck, Kubota 4800 tractor, and trailer as the vehicles that were stolen from his business. Register estimated that on the date of the theft, his truck was worth $10,000, his tractor was worth $15,000, his trailer was worth $3,000, and his bush hog was worth $2,500. He testified that he routinely left the truck and trailer hooked up, with the tractor on the trailer, at his place of business because the gate was locked. Register was able to recover the stolen items in working order the day after the vehicles were stopped in Nacogdoches.

Simpson's mentee, Labravion Thomas, pled guilty and received probation as part of an agreement to testify. Thomas testified that he was 17 years old on the date of the theft, and he considered Simpson to be like a father figure to him. He testified that he would steal trucks, trailers, and tractors with Simpson, who worked with a man named "Freak" to determine what they should steal. Thomas testified that on October 30, 2017, Simpson was driving him home when they made a last-second detour to steal the truck and trailer.

Thomas testified that while Simpson started the truck using keys found in a cupholder, he opened the gate. Simpson drove the truck down the road a short distance while he followed in Simpson's car. They then switched places, and he drove the truck until he was pulled over in Nacogdoches. Thomas fled on foot to a truck stop, where he was arrested. He claimed that he told police that he stole the vehicles because he did not have a police record and wanted to cover for Simpson.

Simpson testified on his own behalf. He considered himself to be a mentor to Thomas. He stated that he dropped off Thomas at Register

3

Oilfield Services in order for Thomas to steal a truck, then went up the road and waited for Thomas before following him. He claimed that Thomas had asked him to pick Thomas up later in Nacogdoches. He went to the truck stop to meet Thomas, and that was where they were arrested. Simpson denied that Thomas told him what he was going to do with the truck, that it was his idea to go to DeSoto Parish, and that he knew what Thomas was going to do when they got to DeSoto Parish. However, he later admitted that he knew about the theft beforehand and that Thomas was going to bring the vehicles to "Freak." Nevertheless, he added that Thomas acted without any influence from him. He claimed that he never went into Register's business or took anything from it, and that he was not going to get a "cut" from the theft. He also denied that he had done other illegal activities with Thomas. However, he later admitted that he stole trucks and tractors for "Freak."

Simpson was found guilty as charged of theft of property having a value of more than $5,000, but less than $25,000.

### *Habitual offender adjudication and sentencing*

A habitual offender bill of information charging Simpson as a third-felony habitual offender was filed on July 5, 2022. The two predicate convictions were both from Shelby County, Texas. On September 12, 2014, Simpson pled guilty to a charge of burglary of a building that was committed on December 23, 2013. He also pled guilty on September 12, 2014, to a charge of theft which had occurred on April 30, 2013. He received a 14-month sentence for each conviction, with the sentences to be served concurrently.

4

A habitual offender hearing and sentencing was held on July 27, 2022. Fingerprints taken of Simpson in court were matched with the fingerprints attached to the bills of information from Texas. The trial court also heard testimony on behalf of Simpson regarding the sentence to be imposed.

Takita Johnson had been Simpson's wife for four years at the time of the hearing. They live in Center, Texas, and they have two minor children together. The younger child has epilepsy and is treated for that condition twice a month in Houston, Texas. Their older child has a liver issue requiring examination in Houston once a year. Simpson's child from another relationship and her two children from another relationship also live with them.

Johnson testified that Simpson assists in the care of his father, who is in his 60s, by handling his appointments, driving him where he needs to go, and getting his groceries. She also testified that Simpson provides care for his elderly aunt. The aunt does not drive or have children nearby who can assist her.

Johnson explained that Simpson is the only person in the family providing financial support. He has a job driving a dump truck. She is unable to work because she suffered a traumatic brain injury from a four-wheeler accident in November of 2017. She cannot drive regularly because she has seizures. Although she has applied for disability benefits, she has yet to receive them. Johnson finished her testimony by stating that Simpson had stayed out of trouble since the incident.

Joseph Simpson testified about how he goes camping, fishing, and horseback riding with his children. He also takes them to movies and water

5

parks. He began driving a dump truck in January of 2022, and supports his wife and five children with his income.

Simpson testified that he provides all of the transportation for his family. He explained that his father was injured in an auto accident in the 1990s, and he is his father's sole caretaker. Simpson added that his youngest child has epilepsy and autism, and requires someone to be with him at all times.

Cynthia Johnson is Simpson's mother. She described a relationship with him that had become closer over the past several years. She testified that Simpson was doing better and that his kids really needed him. Simpson is the main person in the family who provides financial support for his wife and children.

Simpson's attorney asked the trial court to consider Simpson's family obligations and work history, that his wife and father were disabled, and that he cared for an elderly aunt. His attorney also told the trial court that Simpson had not been arrested again since the current offense occurred.

Simpson was adjudicated a third-felony offender. The trial court deferred sentencing Simpson because his presentence investigation report ("PSI") was inaccurate. Nevertheless, because the trial court believed the minimum sentence faced by Simpson was five years, the trial court remanded him on that date to begin serving his sentence.

Sentencing was held on August 29, 2022. The trial court stated that it had considered the testimony given on July 27 as well as the PSI. Simpson was sentenced to 10 years of imprisonment without benefit of probation or suspension of sentence.

6

A motion to reconsider sentence was filed on September 19, 2022. Simpson's attorney argued his sentence was excessive because he was employed at the time of sentencing, he is married, and he financially supports and provides medical transportation to several family members who are unable to work because of disability or age. The motion was denied. Simpson has appealed his sentence.

**DISCUSSION**

Simpson's appellate counsel argues that his midrange sentence is excessive because the property was recovered within hours, the prior offenses occurred on the same date,[2] and he is vital to the well-being of his family. Counsel maintains that evidence of Simpson's extensive family obligations was presented at sentencing through the testimony of his wife and mother, as well as through his own testimony. Counsel points out that while the theft was committed in 2017, Simpson was not arrested until 2019 and then was on bond. Simpson, who is 32 years old, demonstrated personal change by not engaging in any criminal activity from 2017 until sentenced in 2022. Counsel contends that under these circumstances, the longest sentence which is not constitutionally excessive is the mandatory minimum sentence of 5 years.

The State counters that the trial court adequately considered the testimony at the sentencing hearing as well as the information contained within the PSI. The State further argues that while Simpson contends his sentence should be lowered because of his family commitments, he was in a relationship with his wife and had at least two of his three children when he

_____

[2] The convictions were on the same date. The offenses occurred on different dates.

7

committed the theft. He committed the crime with no thought given to how his family would be affected if he was caught, convicted, and possibly sentenced as a third-felony offender. The State also points out that even though the property was recovered shortly after the theft, Register still suffered stress, aggravation, and inconvenience. Finally, the State notes that the prior felonies also involved property crimes and show that Simpson lacks remorse.

A reviewing court imposes a two-prong test to determine whether a sentence is excessive. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects adequate consideration of the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Boehm*, 51,229 (La. App. 2 Cir. 4/5/17), 217 So. 3d 596. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence. La. C. Cr. P. art. 894.1(C). The articulation of the factual basis for the sentence is the goal of art. 894.1, not rigid or mechanical compliance with its provisions. *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307. Where the record clearly shows an adequate factual basis for the sentence, remand is unnecessary even where there has not been full compliance with art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. Sandifer*, 54,103 (La. App. 2 Cir. 12/15/21), 330 So. 3d 1270.

In sentencing, the important elements which should be considered are the defendant's personal history (age, familial ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981);

8

*State v. Sandifer*, *supra*. There is no requirement that specific matters be given any particular weight at sentencing. *State v. Bell*, *supra*.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the severity of the crime or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bell*, *supra*. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166.

The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Bell*, *supra*.

As a third-felony offender, Simpson faced a sentence of 6-2/3 to 20 years at hard labor without benefit of probation or suspension of sentence. We note that the trial court and counsel incorrectly believed the sentencing range was 5-20 years, presumably based on 2017 amendments to the Habitual Offender Law that became effective on November 1, 2017.

On the date that the theft was committed, the Habitual Offender Law stated in La. R.S. 15:529.1(A), in relevant parts:

> (3) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:

9

(a) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction[.]

La. R.S. 15:529.1(A)(3)(a) was subsequently amended by Acts 257 and 282 of 2017 to provide that the minimum sentence was "not less than one-half of the longest possible sentence for the conviction[.]" Acts 257 and 282 had an effective date of November 1, 2017, and each Act provided that it "shall have prospective application only to offenders whose convictions became final on or after November 1, 2017." *See State v. Burns*, 53,250 (La. App. 2 Cir. 1/15/20), 290 So. 3d 721.

Act 542 of 2018 added Subsection K to the Habitual Offender Law. This new subsection states:

K. (1) Except as provided in Paragraph (2) of this Subsection, notwithstanding any provision of law to the contrary, the court shall apply the provisions of this Section that were in effect on the date that the defendant's instant offense was committed. (2) The provisions of Subsection C of this Section as amended by Act Nos. 257 and 282 of the 2017 Regular Session of the Legislature, which provides for the amount of time that must elapse between the current and prior offense for the provisions of this Section to apply, shall apply to any bill of information filed pursuant to the provisions of this Section on or after November 1, 2017, accusing the person of a previous conviction.

The effects of the 2017 and 2018 Acts were considered by the Louisiana Supreme Court in *State v. Lyles*, 19-00203 (La. 10/22/19), 286 So. 3d 407, which noted that the legislature appeared to create three categories of persons potentially affected by the Acts. The third category is:

Finally, there are persons whose convictions became final on or after November 1, 2017, and whose habitual offender bills were filed on or after August 1, 2018. They would receive the reduced cleansing period by operation of Subsection K(2) added by Act 542 but their sentences would be calculated with

10

references to the penalties in effect of the date of commission in accordance with Subsection K(2) added by Act 542.

*Id.* at 5, 286 So. 3d at 410.

Simpson was convicted on March 22, 2022. His habitual offender bill of information was filed on July 5, 2022. Thus, he would be under the third category of *Lyles* defendants. Under the Habitual Offender Law in effect on the date of the theft, October 30, 2017, Simpson faced a habitual offender sentence of "imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction[.]"

The penalty for the grade of theft of which Simpson was convicted is set forth in La. R.S. 14:67(B)(2): "When the misappropriation or taking amounts to a value of five thousand dollars or more, but less than a value of twenty-five thousand dollars, the offender shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than ten thousand dollars, or both." Therefore, the correct sentencing range for the habitual offender sentence was 6-2/3 years to 20 years. The trial court incorrectly believed the minimum sentence was lower. Nevertheless, any error was harmless as the sentence falls within the correct range.

We find that the trial court adequately considered Simpson's personal history and criminal past when determining his midrange sentence. Although Simpson has family obligations, many of those obligations existed before he committed the instant offense. We also note that according to the bills of information from Texas, Simpson's burglary conviction there involved entering a building without consent in order to steal tires, and his theft conviction there involved stealing 1,000 gallons of diesel fuel.

Simpson clearly has no regard for the property of others. Accordingly, we conclude that under the circumstances presented, the trial court did not abuse its discretion in imposing this ten-year sentence.

***Error Patent***

Our error patent review shows that: (1) the court minutes incorrectly state that Simpson's sentence is to be served without parole; (2) the USCO incorrectly states that the crime of conviction was theft of property valued over $25,000 in violation of La. R.S. 14:67(B)(1); (3) his sentence was not imposed at hard labor; and (4) Simpson was not advised of his rights at the habitual offender hearing.

When there is a discrepancy between the minutes and the transcript, the transcript prevails. *State v. Lynch*, 441 So. 2d 732 (La. 1983). This matter is remanded to the trial court with instructions to correct the minutes to state that the sentence is to be served without benefit of probation or suspension of sentence. This matter is also remanded to the trial court to correct the USCO to state that the crime of conviction is theft of property valued more than $5,000, but less than $25,000, in violation of La. R.S. 14:67(B)(2).

The trial court failed to impose Simpson's sentence at hard labor as required by La. R.S. 15:529.1(G). This error is harmless and self-correcting. *State v. Burns*, 53,250 (La. App. 2 Cir. 1/15/20), 290 So. 3d 721.

Finally, we note that at the July 27 hearing, the State presented testimony regarding the prior convictions, then after a sidebar conference, the trial court arraigned Simpson on the habitual offender charge. Simpson pled not guilty. What followed next was the State offered into evidence that testimony and the State's exhibits. Defense counsel did not object to the

admission. Simpson and his family members then offered testimony seeking leniency in sentencing. At the conclusion of the hearing, the trial court found Simpson to be a third-felony offender and set a hearing for August 29 to complete sentencing.

La. R.S. 15:529.1(D)(1)(a) requires that the defendant be advised of the specific allegations contained in the habitual offender bill of information and his right to a formal hearing at which the State must prove its case. Implicit in this requirement is the additional requirement that the defendant be advised of his constitutional right to remain silent. *State v. Mason*, 37,486 (La. App. 2 Cir. 12/10/03), 862 So. 2d 1077 (citing *State v. Bell*, 03-217 (La. App. 5 Cir. 5/28/03), 848 So. 2d 87). In addition, this court has found that the failure to properly advise a defendant of his right to have 15 days in which to object to the habitual offender bill of information constitutes an error on the face of the record. *State v. Taylor*, 53,934 (La. App. 2 Cir. 5/5/21), 321 So. 3d 486.

However, the failure to advise a defendant of his rights is considered harmless error when the defendant's habitual offender status is established by competent evidence offered by the State at the hearing rather than by admission of the defendant. *State v. McKeever*, 55,260 (La. App. 2 Cir. 9/27/23), 2023 WL 6279471, __ So. 3d __.

Simpson was not advised of his rights, in particular his right to remain silent during the habitual offender hearing and his right to have 15 days to object to the habitual offender bill of information. Nevertheless, we note that the habitual offender bill of information was filed 22 days before the hearing. Although the testimony supporting the adjudication was given prior to Simpson being arraigned, his counsel did not object to the evidence and

13

actually sought the bench conference which led to the trial court calling for an arraignment on the bill of information. We further note that while Simpson testified at the habitual offender hearing prior to being adjudicated a third-felony offender, he was not cross-examined, and none of his testimony related to his habitual offender status. Finally, competent evidence of his status was established by the State through the testimony of a certified fingerprint analyst and the documents from the Texas proceedings. As such, the trial court's failure to advise Simpson of his rights was harmless error.

## CONCLUSION

For the foregoing reasons, we affirm Simpson's conviction, habitual offender adjudication, and sentence. We remand to the trial court to correct the minutes and the USCO.

**AFFIRMED AND REMANDED**.