Judgment rendered October 2, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,857-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

TANIEL COLE                                 Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 377,844

Honorable Christopher T. Victory, Judge

* * * * *

LOUISIANA APPELLATE PROJECT              Counsel for Appellant
By: Edward K. Bauman

JAMES E. STEWART, SR.                     Counsel for Appellee
District Attorney

SAMUEL S. CRICHTON
TOMMY J. JOHNSON
Assistant District Attorneys

* * * * *

Before PITMAN, MARCOTTE, and ELLENDER, JJ.

**ELLENDER, J.**

Taniel Cole appeals his sentences on five felony convictions, all ordered to be served consecutively and totaling 190 years. For the reasons expressed, we affirm.

## FACTUAL BACKGROUND

The facts are adapted from Cole's earlier appeal, *State v. Cole*, 55,172 (La. App. 2 Cir. 8/9/23), 370 So. 3d 106.

In August 2020, Cole had an argument with his fiancée, Rotaundra Lewis, at Ochsner-LSU St. Mary Medical Center, where Lewis's daughter was a patient. After Cole left, Lewis asked nurses to keep him out of the girl's room, but he came back around 5:00 a.m.

A nurse, Wesley Bray, told Cole that Lewis didn't want him in the child's room, but Cole pulled a gun and forced Bray and two other nurses, Kelsey Simpson and Cheyanna Alford, into the room and ordered them to lie on the floor. The commotion caused the father of a patient in the next room, Mario Davenport, to complain at the nurses' station; Davenport and the floor nurse, Katherine Scott, walked down to Lewis's room. When they saw Cole was armed, they turned back and ran down the hall. Cole fired at Nurse Scott but missed. Davenport came at Cole with a knife, but Cole shot him in the leg.

Cole then chased down Nurse Scott, pulled her to the floor, and held the gun on her; after she pled for her life, he darted into an elevator and left. Once outside, however, he spotted another person, Twyla Davis, parking her Chevy Traverse in an adjacent lot. He ran to the vehicle, pointed the gun in her face, and ordered her to drive him to Ruston. She complied and they

started the trip, but after they heard on the radio that the police were after him, Cole told her to take him home, to Farmerville, instead. On the way, he rifled through Davis's purse, taking her credit cards, ID, $1,800 in cash, and cellphone.

Once they got to his house, Cole allowed Davis to use the restroom; he then took the wheel of her SUV and took them to a bank, where he drove through the ATM line and withdrew some money, and then to a used car lot in Monroe, where he "test drove" a car and told Davis to follow him. He warned her to keep quiet, as he now knew exactly where she lived, and then drove off in the test-drive car. Cole was eventually taken down by "pit maneuver" in Meridian, Mississippi, and extradited to Caddo Parish.

**PROCEDURAL HISTORY**

The state charged Cole with the attempted second degree murder of Davenport, the second degree kidnappings of Simpson, Bray, Alford, and Davis, and the armed robbery committed with a firearm of Davis. After a three-day trial in April 2022, the jury unanimously found him guilty of the attempted manslaughter of Davenport, and guilty as charged on all other counts. The district court sentenced him to: 10 years at hard labor for attempted manslaughter; 20 years at hard labor for the first three second degree kidnappings, including "at least two years" without benefits; 40 years at hard labor for the fourth second degree kidnapping, including "at least two years" without benefits; and 75 years at hard labor for the armed robbery, without benefits, plus five years for the firearm enhancement. All sentences were to be served consecutively.

Cole appealed contending the individual sentences were excessive (especially the 80 years total for armed robbery), the aggregate sentence of

2

190 years was excessive, and the court failed to comply with the guidelines of La. C. Cr. P. art. 894.1. This court found that the four sentences for second degree kidnapping were indeterminate, in violation of La. C. Cr. P. art. 879, because "at least two years" was not a precise number. This court also found that while the district court seemed to justify each individual sentence, it did not give any reasons for making them all consecutive, as required by La. C. Cr. P. art. 883. The convictions were affirmed, the sentences for second degree kidnapping were vacated, and the whole case was remanded for resentencing in compliance with Art. 883.

At resentencing, in September 2023, the district court reimposed the 20-year sentences for the second degree kidnappings of Simpson, Bray, and Alford, but carefully noted that each was subject to *five years without benefits*. For the fourth, of Davis, he reimposed the 40-year sentence, but made it subject to *20 years without benefits*.

The court then documented Cole's criminal history, starting with a guilty plea to illegal possession of a stolen car, in Orleans Parish in 1997, resulting in a three-year suspended sentence and probation; probation was revoked later that same year when he pled guilty to unauthorized use of a motor vehicle and was sentenced to five years in a DPSC boot camp. In 2002, an Orleans Parish jury convicted him of illegal possession of a stolen auto, and he was sentenced, as a multiple offender, to seven years' hard labor. In 2003, in Jefferson Parish, he pled guilty to armed robbery and was sentenced to 20 years. The district court summed this up as "one of the more extensive criminal histories I've ever seen."

Turning to the instant offenses, the court described them as "one of the more egregious things I've ever seen." The court deemed the individual

3

acts not necessarily a single course of conduct but "multiple felonies." The court also referred to the psychological harm inflicted on Ms. Davis, the numerous people threatened at gunpoint, and the apparent failure of all prior rehabilitative efforts. The court then reinstated all sentences as consecutive.

Cole moved for reconsideration of sentence, which was denied summarily. He has appealed raising one assignment, that the court erred in imposing constitutionally excessive sentences, and advancing three issues.

**APPLICABLE LAW**

A reviewing court applies a two-prong test to determine whether a sentence is excessive. First, we examine the record to see if the trial court used the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects adequate consideration of the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Boehm*, 51,229 (La. App. 2 Cir. 4/5/17), 217 So. 3d 596. The court shall state for the record the considerations taken into account and the factual bases therefor in imposing sentence. La. C. Cr. P. art. 894.1 (C). The goal of Art. 894.1 is an articulation of the factual basis for sentence, not simply a mechanical compliance with its provisions. *State v. Lanclos*, 419 So. 2d 475 (La. 1982).

The second prong is constitutional excessiveness. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166. A

4

trial court has wide discretion to sentence within the statutory limits; absent a showing of manifest abuse of that discretion, such a sentence will not be set aside as excessive. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Fruge*, 14-1172 (La. 10/14/15), 179 So. 3d 579.

Regarding concurrent and consecutive sentences, La. C. Cr. P. art. 883 provides:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.

The decision to make sentences consecutive rather than concurrent is within the trial court's discretion. *State v. Farria*, 412 So. 2d 577 (La. 1982); *State v. Moss*, 55,454 (La. App. 2 Cir. 1/10/24), 379 So. 3d 285. When the court makes a sentence consecutive, it must state the considerations, which may include the defendant's criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant constitutes an unusual risk of danger to the public, the potential for the defendant's rehabilitation, and whether the defendant has received a benefit from a plea bargain. *State v. Gant*, 54,837 (La. App. 2 Cir. 1/11/23), 354 So. 3d 824, and citations therein.

5

## DISCUSSION

As noted, Cole raises three arguments. He first contends the court erred in finding no mitigating circumstances. He shows that the court did not order a presentence investigation report, though he does not dispute the court's recitation of his criminal history. He then reiterates the assertions of his motion to reconsider: he has "untreated mental health problems," specifically that he did not get along with his stepfather growing up; he witnessed domestic violence at a young age, was twice sent to inpatient treatment for depression and suicidal ideation between ages 15 and 16, but did not receive follow-up treatment or therapy; and he never received the mental health assessment suggested by a sentencing consultant. He submits that the court violated Art. 894.1 by failing to consider his untreated mental health issues.

At the first sentencing hearing, the district court explicitly found that every factor favoring imprisonment under Art. 894.1 (A) applied: there was an undue risk that during a period of suspended sentence or probation the defendant would commit another crime; the defendant was in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; and a lesser sentence would deprecate the seriousness of the crime. The court then found that many of the aggravating factors under Art. 894.1 (B) applied: Cole's conduct showed deliberate cruelty in that the victims were innocent bystanders who "happened to be at the wrong place at the wrong time," and Cole could have ended his escapade at any time but, instead, carried it to grotesque lengths; he created a risk of death or great bodily harm to more than one person; he used threats of or actual violence against the victims; he committed these

6

offenses to facilitate or conceal other offenses; he used a dangerous weapon; and he was persistently involved in similar offenses not already considered in criminal history or as part of a multiple offender adjudication. The court concluded that no mitigating factors applied, obviously finding that Cole's alleged psychological issues did not excuse or justify his conduct. On this record, the court could easily find that Cole's psychological history did not constitute an excuse or justification for his conduct. It certainly did not deter him from committing this horrible, cascading sequence of criminal acts. The district court adequately complied with Art. 894.1.

Cole's second argument is that the court erred in making all sentences consecutive. Citing Art. 883, he contends the court referred only to the "criminal history, the gravity and dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant constitutes an unusual risk of danger to the public, and the potential for the defendant's rehabilitation." He submits that the record does not support consecutive sentences; for the armed robbery alone, he received 80 years, and the imposition of more consecutive sentences "was merely overkill."

In our earlier opinion, we admonished the district court for imposing consecutive sentences without giving an "articulated justification or explanation." At the second sentencing hearing, the court meticulously tracked the factors of Art. 883, first relating Cole's long and troubling criminal history, outlined earlier. The court then recounted the facts of the instant crimes, finding them "egregious," "a series of events," and "multiple felonies." The court also cited the psychological harm to the victim he held at gunpoint the longest, the impact of holding a gun on several nurses, and of

7

actually shooting a bystander who was trying to help. Then, after exiting the hospital, instead of fleeing the scene Cole commandeered Ms. Davis and her SUV, forcing her on an odyssey from Shreveport to Farmerville and then to Monroe. Finally, the court recognized Cole had already received probation that was revoked, a multiple offender conviction, and, finally, a long prison term, for armed robbery.

In our earlier opinion, we stated that the kidnappings related to the three nurses in the hospital room happened at or around the same time and would be presumptively concurrent under Art. 883. While the court did not expressly address this concern, it repeatedly stated that the offenses occurred in a "public place," a "hospital," which should be a haven of safety for patients and staff. Cole's conduct shattered that aura of safety. The district court adequately articulated this and justified the consecutive sentences, under the standard of *State v. Gant*, *supra*. This argument lacks merit.

By his final argument, Cole contends the sentences are excessive. He concedes that his actions that day cannot be explained or condoned, but submits he possibly suffered a psychotic episode of some sort after being barred from Lewis's daughter's hospital room, and he did not really want to hurt anyone. He admits he shot Davenport, but only in the leg and only after Davenport charged him with a knife. He contends that no other victim testified to suffering any physical or mental injuries; he never threatened to hurt the nurses or Davis, whose vehicle he commandeered; and Davis had several opportunities to flee and seek help, but she never did. On these facts, he suggests his conduct does not "seem like the actions of a hardened violent criminal." He adds that only one of his prior offenses was a crime of violence. Finally, he argues that incarceration costs of $62.63 a day, or

8

$22,860 a year, constitute a needless imposition of pain and suffering on the taxpayers of Louisiana.

Some of Cole's factual assertions may be quickly dismissed. One of the nurses held at gunpoint, Bray, testified that when he tried to calm Cole down, Cole replied that "he was going to blow my head off if I didn't shut up." Davis testified that when Cole drove her SUV through the ATM line at the bank, he warned her not to show the teller the "fear in her face"; after he left in the car he was "test driving," she thought about getting away, but was too afraid to do so. "He's still got a gun. He'll shoot me," she testified. The district court specifically found that she sustained psychological harm. In short, Cole could have done his victims much worse, but the contention that they suffered no harm is disingenuous.

Refuted assertions aside, Cole argues with some cogency that the total of 190 years seems out of proportion to the gravity of the offenses. On appellate review, however, the role of the court is not to determine whether another sentence would have been more appropriate, but whether the trial court abused its discretion. *State v. Fruge*, *supra*; *State v. Moss*, *supra*. While this court may question the deterrent effect of a 190-year sentence as opposed to, say, an 80-year total sentence for armed robbery concurrent with the other sentences, we recognize that many things informed the district court's sentencing choice. Cole showed a gross disregard for the wishes of his fiancée and the safety of her daughter; a shocking disrespect for the quiet and serenity of a hospital; a horrible assault on nurses trying to protect a patient; he inflicted a gunshot wound on a bystander who tried to help, and took his final victim, Davis, on a terrifying 100-mile ride. His criminal history showed an escalation from property crimes to violent crimes, which

9

suspended sentences, probation, and jail time did nothing to deter. Finally, we must note that for the offenses of conviction, most of the sentences imposed are only midrange, and the state did not elect to charge Cole as a multiple offender. Although the total sentence pushes the upper boundaries for these offenses and this offender, we cannot say the district court abused its vast discretion. This argument lacks merit.

## CONCLUSION

For the reasons expressed, Taniel Cole's convictions and sentences are affirmed.

**AFFIRMED**.