Judgment rendered May 21, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,299-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                     Plaintiff-Appellee

versus

JORDAN J. ONEAL-TAYLOR                  Defendant-Appellant

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 23-CR-33248

Honorable Nicholas E. Gasper, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for
By: Mary Constance Hanes             Defendant-Appellant

CHARLES BLAYLOCK ADAMS               Counsel for
District Attorney                    Plaintiff-Appellee

RHYS E. BURGESS
NANCY F. BERGER-SCHNEIDER
Assistant District Attorneys

* * * * *

Before STEPHENS, THOMPSON, and HUNTER, JJ.

**HUNTER, J.**

Defendant, Jordan J. Oneal-Taylor, was charged by amended bill of information with second degree battery, in violation of La. R.S. 14:34.1. Following trial, a six-person jury found defendant guilty as charged. He was sentenced to serve eight years at hard labor, with two and a half years suspended. For the following reasons, we affirm.

## FACTS

On January 2, 2023, the DeSoto Parish Sheriff's Office ("DPSO") responded to a call about a fight at a house party in Logansport. Deputy Melvin "Jake" Fayard and Sergeant Will Bates arrived at the scene and noticed a silver car parked in the driveway with a broken back windshield with blood around it. The deputies also observed a trail of blood leading from the damaged vehicle to the residence. Deputy Fayard and Sgt. Bates entered the residence and saw Dylan Jones sitting on a sofa bleeding; Jones had noticeable injuries to his head, face, and hand.[1] Deputy Fayard attempted to interview Jones; however, he noticed Jones appeared to be "very intoxicated," which made it difficult to understand him. Jones was transported to a hospital for treatment.

The deputies interviewed others at the residence, including Janie McDonald, the owner of the damaged vehicle. McDonald provided the deputies with a photograph of the person who caused Jones' injuries and the damage to her vehicle. While speaking to witnesses, the deputies also learned the suspect, described as a "light skinned" black male, had left the

---

[1] The deputy took photographs of Jones' injuries, the scene inside of the residence, and the damage to the vehicle. The photographs were admitted into evidence and published to the jury during defendant's trial.

residence in a red Camaro driven by a white female. The DPSO issued a "BOLO" (Be on the Lookout) in connection with the red Camaro, and soon thereafter, Deputy Blake McCoy executed a traffic stop on a red Camaro. Defendant, Jordan Oneal-Taylor, was a passenger in the vehicle; his girlfriend, Desiray Tibbits, was the driver.

Defendant was interviewed by law enforcement, and initially, he denied having been involved in or witnessing an altercation or battery. However, during a follow-up interview, defendant admitted to striking Jones in the face. Defendant was arrested and charged with second degree battery, in violation of La. R.S. 14:34.1, and simple criminal damage to property, in violation of La. R.S. 14:56(B)(2), in connection with the damage to the vehicle.[2]

Multiple witnesses testified at defendant's trial and provided varying accounts of the incident. Landon Loftin testified he and Jones had planned a New Year's Day party at Jones' residence and posted an open invitation on social media. Loftin stated 30-60 people came to the party, but he did not know anyone except Jones and a guest named Michael Lilley. According to Loftin, during the party, he was inside a camper on Jones' property when he heard two to four gunshots.[3] He stated he ran outside and saw Jones trying to "get the people with the gun" to leave. Loftin testified that after speaking to the man with the gun, Jones attempted to walk away when another man, later identified as defendant, struck Jones in the back of the head with his

---

[2] The State dismissed the criminal damage to property charge.

[3] Law enforcement officers retrieved rifle shell casings from the yard near the driveway.

fist.[4] Loftin stated the blow rendered Jones unconscious, and Jones' head struck the rear windshield of the car as he fell over the back of a car. He testified defendant continued to strike Jones as he lay on the ground unconscious. Loftin also stated Michael Lilley pulled defendant off Jones, while defendant's girlfriend began to "take swings" at them. Additionally, Loftin testified the damage to the back windshield of the silver car occurred when Jones' head struck the windshield. He further testified he and Lilley moved an unconscious Jones into the house, and Jones began to regain consciousness when they placed him on the sofa.

Michael Lilley testified he heard gunshots, and he ran outside and saw a man holding an "AR-type" weapon. Lilley also testified he saw defendant approach Jones from behind and strike him in the back of the head, causing him to fall and hit the back windshield of the car. He stated defendant struck Jones "seven or eight" times, and his girlfriend hit him at least "a couple of times" as Jones lay on the ground unconscious. Lilley stated defendant and his girlfriend left the party after he and Loftin pulled them off Jones.

John Sojka testified he and his girlfriend, Ashley Roberts, attended the party at Jones' residence. He stated he and defendant were friends, and he saw defendant at the party with his girlfriend, Desiray Tibbits. Sojka testified Jones, who he did not know, approached him, and slapped him in his face for no apparent reason. According to Sojka, defendant hit Jones, rendering him unconscious, in retaliation for slapping Sojka. He also stated he left the party after the incident, and he did not know what happened thereafter. He also testified his girlfriend hit "a couple of dudes" at the

_____

[4] Loftin testified the man with the gun left in a white car approximately five minutes after the shots were fired.

3

party, but he stated she did not hit Jones. He further admitted his AR-15 was in his vehicle, but he denied firing it at the party.[5]

Jones testified he did not know all the people who attended his party. He stated he saw Sojka standing by a white car shooting "three or four" rounds into the air from an AR-15 rifle. He stated he told Sojka to leave, and he and Sojka began arguing. However, he denied slapping Sojka. Jones also testified as he walked away from Sojka, someone approached him from behind and struck him in the back of the head. He stated he did not see who hit him, and he did not regain consciousness until after he was inside his residence. Jones also testified he was bleeding from his head and hand, and he was transported to the hospital, where he received nine stitches in his left hand and four stitches near his left eye. Jones described his other injuries, which included a "knot" on the back of his head and multiple lacerations on three of his fingers, two of which required stitches. During cross-examination, Jones testified he did not know how he injured his hand, and he denied telling a police officer he injured his hand when he struck a mirror.

Detective Jennifer Gaddy testified she interviewed defendant on January 5, 2023.[6] During the interview, defendant admitted to striking Jones "in the face" because Jones shoved his hand in his girlfriend's face and in Sojka's face. Det. Gaddy also testified she wrote in her report that Jones told her he struck objects, including a mirror, inside his home.

Two witnesses, Desiray Tibbits and Branton Wilson, testified on behalf of defendant. Tibbits testified she accompanied her boyfriend,

---

[5] Sojka further testified in March 2023, defendant sent him a text message telling him he should come forward and "admit what happened" at the party. Sojka stated he interpreted the message to mean defendant wanted him to "take the charge."

[6] A portion of the videotaped interview was played for the jury.

defendant, to the New Year's party at Jones' residence. Tibbits stated defendant "punched" Jones because Jones slapped Sojka. Tibbits denied striking Jones. According to Tibbits, Sojka's girlfriend, Ashley Roberts, struck Jones multiple times. Tibbits stated she came to Jones' aid by helping pull Roberts off him.

Branton Wilson also attended the party, and he testified he saw Jones strike Sojka, and in response, defendant struck Jones. Wilson also stated defendant struck Jones in the face, not in the back of the head, and Jones' head "went through" the back window of the silver car as he fell to the ground.

Following the trial, a six-person jury found defendant guilty as charged of second-degree battery. The trial court denied defendant's motions for new trial and post-verdict judgment of acquittal. The trial court sentenced defendant to serve eight years in prison at hard labor, with two and a half years suspended.

Defendant appeals.

## DISCUSSION

Defendant contends he was denied the effective assistance of counsel at his sentencing hearing, in violation of the Sixth Amendment to the United States Constitution. He argues his trial counsel made an oral motion to reconsider sentence immediately after the trial court imposed the sentence; however, counsel failed to articulate any grounds for the motion. Defendant asserts that due to counsel's failure, the appeal of his sentence is limited to the bare claim of constitutional excessiveness, and he is barred from raising a claim that the district court failed to articulate and follow the factors set forth in La. C. Cr. P. art. 894.1(C).

The Fourth Amendment to the United States Constitution and Article I, Section 13 of the Louisiana Constitution guarantee a criminal defendant's right to the effective assistance of counsel. *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); *State v. Brooks*, 94-2438 (La. 10/16/95), 661 So. 2d 1333; *State v. Bayles*, 53,696 (La. App. 2 Cir. 11/17/21), 329 So. 3d 1149. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court established the two-prong test for a defendant claiming ineffective assistance of counsel. Under the standard for ineffective assistance of counsel set out in *Strickland*, *supra*, and adopted by the Louisiana Supreme Court in *State v. Washington*, 491 So. 2d 1337 (La. 1986), a reviewing court must reverse a conviction if the defendant establishes (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's inadequate performance prejudiced the defendant to the extent that the trial was rendered unfair and the verdict suspect. *State v. Ball*, 19-01674 (La. 11/24/20), 305 So. 3d 90; *State v. Bayles, supra*.

Claims of ineffective assistance of counsel are more properly raised in an application for post-conviction relief in the trial court because this provides the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. *State v. McGee*, 18-1052 (La. 2/25/19), 264 So. 3d 445; *State v. Ward*, 53,969, (La. App. 2 Cir. 6/30/21), 324 So. 3d 231. However, when the record is sufficient, allegations of ineffective assistance of trial counsel may be resolved on direct appeal in the interest of judicial economy. *Id.*

In the instant case, the appellate record is sufficient to dispose of defendant's claim of ineffective assistance of trial counsel. Defendant asserts that but for defense counsel's deficient performance, he could have

6

challenged his sentence on appeal on specific grounds. Although defendant fails to identify any particular basis for challenging the sentence, his chief complaint is that he is precluded from raising the claim that the trial judge failed to comply with La. C. Cr. P. 894.1. Defendant is correct in that he is relegated to urging a claim of bare constitutional excessiveness; however, remand for more complete compliance with La. C. Cr. P. art. 894.1 is not necessary when the record otherwise clearly supports the sentence.

Herein, defendant does not articulate any facts to indicate that he would have received a lesser sentence but for defense counsel's failure to urge reconsideration of the sentence on specific grounds, and he has failed to establish setting forth specific grounds for his motion to reconsider would have resulted in a different sentence. Furthermore, the record reflects the trial court adequately articulated reasons to support defendant's sentence. The court considered defendant's background, including his age, family history, educational and employment background, and criminal history. The court also considered defendant's medical history, including a history of attention deficit, hyperactivity, and impulse control disorders, depression, and anxiety. The trial court noted defendant committed the offense (and other offenses) while he was under supervision for sexual assault and aggravated kidnapping he committed as a juvenile in 2019. Based on the foregoing, we find defendant has not met his burden to support a claim of ineffective assistance of counsel.

Defendant also contends the eight-year sentence imposed is the maximum sentence for second degree battery and is constitutionally excessive. He argues maximum sentences are reserved for the worst offenses and the worst offenders, and he is not the worst offender. He

maintains he merely had a physical altercation with an "extremely intoxicated" person, whom he believed had insulted and assaulted his girlfriend and his friend.

As stated above, because defendant failed to articulate a basis for the motion to reconsider sentence, the appellate review of the sentence is limited to a bare claim of constitutional excessiveness.

A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166.

A trial court has wide discretion to sentence within the statutory limits; absent a showing of manifest abuse of that discretion, such a sentence will not be set aside as excessive. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Fruge*, 14-1172 (La. 10/14/15), 179 So. 3d 579. The sentencing court is not limited to considering only prior convictions and may review all evidence of prior criminal activity, including evidence that would otherwise be inadmissible at trial, *e.g.*, prior arrests, hearsay evidence of suspected criminal acts, conviction records, and evidence of uncharged or nol prossed offenses. *State v. Washington*, 414 So. 2d 313 (La. 1982); *State v. Dale*, 53,736 (La. App. 2 Cir. 1/13/21), 309 So. 3d 1031. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case,

8

and, therefore, is given broad discretion in sentencing. *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116.

Whoever commits the crime of second-degree battery shall be fined not more than $2,000 or imprisoned, with or without hard labor, for not more than eight years, or both. La. R.S. 14:34.1.

Herein, the trial court sentenced defendant to eight years at hard labor. After careful consideration, we find the eight-year sentence, with two and one-half years suspended, is within the statutory range and is not constitutionally excessive. Although defendant described the incident as a "drunken brawl," the testimony established no brawl occurred. Defendant committed a senseless act of violence; he approached Jones from behind and struck him in the back of his head with such force that he was rendered unconscious. Given these facts, defendant's sentence is neither grossly out of proportion to the severity of the crime nor a needless infliction of pain and suffering. Accordingly, we cannot say the sentence shocks the sense of justice.

## CONCLUSION

For the reasons expressed herein, we hereby affirm defendant's conviction and sentence.

**CONVICION AFFIRMED; SENTENCE AFFIRMED.**

9