Judgment rendered May 20, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,866-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                              Appellee

versus

CROSS SEBASTIAN MCCRAY                          Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 399,445

Honorable Chris Victory, Judge

* * * * *

THE HARVILLE LAW FIRM, LLC                  Counsel for Appellant
By: Douglas Lee Harville

JAMES E. STEWART, SR.                        Counsel for Appellee
District Attorney

MARY JOINER ABLE
COURTNEY RAY
VICTORIA T. WASHINGTON
Assistant District Attorneys

* * * * *

Before STONE, MARCOTTE, and ELLENDER, JJ.

**STONE, J.**

This case arises from the First Judicial District Court, the Honorable Chris Victory presiding. Cross Sebastian McCray (the "defendant") was charged with and – after a jury trial – convicted of simple arson in violation of La. R.S. 14:52(a)(2). Specifically, the state's amended bill of information ("BOI") alleged that, on or about December 20, 2022, the defendant "started a fire while engaged in the perpetration or attempted perpetration of another felony offense even though he did not have the intent to start a fire at 4118 & 4120 Curtis Lane where the damage amounted to more than $500." On June 17, 2025, the trial court sentenced the defendant to 10 years of imprisonment at hard labor. On July 14, 2025, the defendant filed a motion to reconsider sentence. The trial court denied this motion without hearing on July 15, 2025. On appeal, the defendant *in effect* argues: (1) the evidence is insufficient to support his conviction for simple (unintentional) arson because, actually, *he started the fire on purpose*; and (2) his ten-year sentence is excessive. While the defendant frames the attack on his conviction as a "sufficiency of the evidence" claim, it turns on statutory interpretation. For the reasons stated herein, we affirm.

## FACTS

Around 9:00 p.m. on December 19, 2022, the defendant commenced a burglary at his place of employment – an auto mechanic shop on Curtis Lane in Shreveport. His endeavors kept him in the building past midnight. At 1:24 a.m. on December 20, 2022, he exited the building driving the car – a 1989 Cutlass – he was stealing along with the tools he was also stealing inside the trunk. He re-entered the building five minutes later, poured fluid

from a fuel can around the place, and set it afire. The security camera recorded this episode.

On May 1, 2024, the defendant was charged with one count of simple arson; the original BOI cited La. R.S. 14:52 but did not allege any specific facts (other than identifying the victims) or specify whether the defendant committed the crime as defined in subsection (a)(1), subsection (a)(2), or both. On May 2, 2025, the state filed an amended BOI again citing La. R.S. 14:52 and charging the defendant thereunder, but also specified that the defendant violated the statute in that he "started a fire while engaged in the perpetration or attempted perpetration of another felony offense even though he did not have the intent to start a fire at 4118 & 4120 Curtis Lane where the damage amounted to more than $500." That allegation tracks the language of subsection (a)(2) of the statute.

Less than a week later, on May 7 and 8, 2025, the case was tried before a jury. While denying that he is the burglar/arsonist, the defendant narrates what the trial evidence established as follows:

> On December 19, 2022, Mr. McCray was working as a car mechanic at a garage located at 4118 Curtis Lane. R. 403-09. Mr. Robert Thomas supervised the other garage employees when the owner was not present. R. 400-01. According to the investigation, "[t]here were no set hours, again, because . . . [the garage] was subleased out. Each individual had their own tools. They come and go as they wanted[,]" though there were "normal" business hours. R. 372.

> On December 19, 2022, at approximately 9:01 p.m., a burglar arrives by car at the garage. R. 373-74; State's Exhibit 11. The burglar leaves the car, the passenger comes to the driver's side of the car, they appear to embrace, and the passenger drives off after the burglar enters the building. State's Exhibit 11.

> At approximately 1:24 a.m. on December 20, 2022, a 1989 Cutlass is driven out of the garage, arguably containing tools belonging to Mr. Thomas. The burglar exits the

2

vehicle, closes the door through which the car had traveled, reenters the car, and drives away. State's Exhibit 11. At approximately 1:29 a.m., the burglar approaches a door, near where the 1989 Cutlass had been driven from the garage. The burglar reaches up, unscrews a lightbulb, and enters the door. The burglar proceeds to start a fire in the garage using gasoline. R. 374-81, State's Exhibit 11.

The prosecution agrees, except in that it identifies the defendant as the burglar/arsonist.

The state called three witnesses at trial: (1) Shreveport Fire Investigator Lawrence Bunton ("Bunton"); (2) Sergeant John Madjerick of the Shreveport Police Department; and (3) Robert Thomas, second-in-command at the mechanic shop. The salient trial testimony is summarized in the following paragraphs.

Bunton responded to the scene in the early morning of December 20, 2022, and testified regarding his investigation and findings. The structure at 4118 & 4120 Curtis Lane housed an automotive repair business ("the Curtis Lane auto repair shop"). Bunton spoke with Robert Thomas ("Thomas") and the defendant, who worked there as mechanics. Crucially, Bunton opined that the fire was an "incendiary fire," which means that the fire was set intentionally by a human. This opinion was based on Bunton's investigation at the scene, physical evidence, and surveillance video from the cameras at the building.

Bunton also testified about the surveillance video obtained from the building security cameras. Portions of the surveillance video were played for the jury with Investigator Bunton's explanations and determinations as follows. On December 19, 2022, Thomas and McCray are seen arriving to work and entering the building. McCray is dropped off by an individual driving a blue car. The video shows the men going about their workday.

Thomas and McCray were wearing the same type of coveralls, but Thomas was wearing black coveralls with tennis shoes and McCray was wearing navy coveralls with "square-toed, brown work boots." Bunton testified that he was able to identify the two men on the surveillance video as Thomas and the defendant based on his personal observation of after the fire and during interviews, and the men's descriptions of what they had been wearing that day. Bunton observed on the surveillance video an individual enter the building at 9:00 p.m. that night, which was after the time of normal business at the mechanic shop. There were no other individuals in the building at that time. At 1:17 a.m., a roll-up door opens and at 1:24 a.m., a car (the 1989 Cutlass) exits the garage through the roll-up door. At 1:29 a.m., the individual approaches a walk-through door, reaches up with his left hand and unscrews the lightbulb "to get rid of the light on that side" of the building. Bunton testified that despite the lack of light from the bulb, he was still able to see into the building under the partially raised roll-up door. He could make out the individual, carrying what appeared to be a fuel canister, walking back and forth between the cars in the building and creating reflections of light on the concrete until the smoke began billowing and obscured the video cameras. Bunton identified this last and only individual to be in the building as the defendant, Cross McCray.

Sergeant John Madjerick of the Shreveport Police Department testified as an expert in fingerprint analysis and identification. Of two light bulbs collected from the scene, a latent fingerprint on the bulb the perpetrator reached up with his left hand to unscrew was matched to the defendant's left middle finger.

4

Thomas testified that he was "the headman in charge" of the mechanics at the Curtis Lane auto repair shop when "the owner" was not there. Thomas identified the defendant on the surveillance video by the way he walks. After the fire, Thomas's tools, including computer diagnostic equipment, valued by Thomas at $3,000 to $4,000, were missing. There was fire damage to customers' vehicles that were in the building for repairs of varying values in excess of $500. One vehicle, the 1989 Cutlass that had been in the Curtis Lane auto repair shop, was missing from the building after the fire.

The trial court charged the jury as follows:

> The possible verdicts you may render are:
> 1. Guilty as charged of Simple Arson Where the Damage Done Amounted to Five Hundred Dollars or More; or
> 2. Guilty of Simple Arson Where the Damage Done Amounted to Less than Five Hundred Dollars.
> 3. Not guilty.
> Simple arson is the starting of a fire or causing an explosion while the offender is engaged in the perpetration of a Simple Burglary even though the offender does not have the intent to start the fire or cause the explosion. Thus, to convict the defendant of the offense charged, you must find:
> (1) That the defendant was engaged in the perpetration of a simple burglary; and
> (2) That a fire was started as a direct result of the defendant's commission of the Simple Burglary even though the defendant did not intend to start the fire…
> Simple Burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, cemetery, with the intent to commit a felony or any theft therein.

The jury returned a unanimous verdict of guilty as charged.

**Assignment 1: Sufficiency of the evidence**

The defendant does *not* argue that the evidence was insufficient to prove that he is the person who perpetrated the crime[1] or that the crime of arson was not committed. Rather, he argues: (1) the fact that he left the building with his loot and re-entered five later minutes to burn down the building, legally requires that this episode be broken into two separate burglaries; and (2) that the bill of information alleged that he did *not* intend to start the fire (La. R.S. 14:52 (A)(2)), but the evidence of intentionality was so strong it *required* the jury to find that he *did* intend to start the fire (La. R.S. 14:52(A)(1)). From those premises, the defendant argues that the state failed to prove its case as charged under La. R.S. 14:52(A)(2) only.

Essentially, the defendant argues that the evidence was so clear that he intentionally started the fire that no reasonable juror could conclude it was unintentional.[2] Thus, *in effect*, the defendant argues that – as a matter of law – he cannot be convicted of "unintentional arson" under La. R.S. 14:52(A)(2) because the evidence clearly shows he set the fire on purpose. Thus, the issue here is not the typical sufficiency of the evidence issue (i.e., whether the evidence rose to the level of proof beyond a reasonable doubt); instead, it is whether the charged offense – La. R.S. 14:52(A)(2), only, per the amended BOI – is the offense that the evidence proved. This is a question of law. If La. R.S. 14:52(A)(2) includes intentional arson, the

---

[1]The defendant maintains that he is not the person who started the fire even though he has already been convicted as such, and even though he does not argue that the evidence was insufficient to identify him as the perpetrator. La. C. Cr. P. art. 920 prohibits this court from considering any issues not raised in the assignments of error, except for errors patent. (The correctness of the jury's identification as the perpetrator is not a question that can be considered as an error patent.) Thus, for purposes of this appeal, it is conclusively established that the defendant is the perpetrator.

[2] La. C. Cr. P. art. 920, *supra* at n.1.

6

conviction is valid (even if the defendant's other premises are granted *arguendo*).

La. R.S. 14:52, pursuant to which the defendant was convicted, states:

> A. Simple arson is either of the following:
> (1) The intentional damaging by any explosive substance or the setting fire to any property of another, without the consent of the owner and except as provided in R.S. 14:51.[3]
> (2) The starting of a fire or causing an explosion while the offender is engaged in the perpetration or attempted perpetration of another felony offense *even though* the offender does not have the intent to start a fire or cause an explosion. (Emphasis added.)

The dispositive issue is whether the form of the crime defined in subsection (A)(2) includes unintentional and intentional fire-starting, or, on the other hand, only unintentional fire-starting. We hold that this form of the crime includes both intentional and unintentional fire-starting. Our reading of the concessive subordinating clause, "*even though* the offender does not have the intent to start a fire," depends not merely on dictionary definitions, but also, on how the clause operates semantically and structurally within the sentence. "Even though" signals that the main clause remains true *despite* the condition that follows. That linguistic function aligns more closely with "even if," which naturally expresses "regardless of whether." The statute explicitly makes intent unnecessary; it is saying "lack of intent is not a defense" – not "presence of intent is a defense." While "even though" and "even if" are not interchangeable in every context, in this statute they

---

[3] The operative language of subsection (A)(1) is "intentional setting fire to any property of another." By arguing that the evidence of intent is so strong that it *requires* the jury to find intentionality in setting the fire, the defendant, in effect, admits he did exactly what paragraph (1) describes. The defendant argues the fact that he committed this form of simple arson does not support his conviction because, per the amended BOI, he was not charged with committing this form of the crime.

converge in meaning because the clause functions to make intent irrelevant under all circumstances. The concessive clause operates not as a statement of fact but as a rule broadening applicability. Thus, the crime is completed when the offender starts a fire while engaged in the perpetration of another felony whether he intended to start a fire or not.

The underlying felony during which the defendant started the fire is simple burglary under R.S. 14:62(A)(1); that crime is defined as follows: "Simple burglary is the unauthorized entering of any dwelling…or other structure…with the intent to commit a felony or any theft therein." Thus, unauthorized entry with the intent to commit any theft or any nontheft felony completes burglary; however, though complete upon entry, the burglary continues to be *ongoing* at least as long as the burglar remains inside the premises. The evidence is amply sufficient to prove that (1) the defendant entered the building at 1:29 a.m. on December 20, 2022, without authorization but with intent to commit arson, and (2) started the fire while inside, i.e., while engaged in the perpetration of burglary. Therefore, his conviction is supported by sufficient evidence even granting *arguendo* the defendant's "two burglary theory," his conclusion about the charging instruments, and his conclusion regarding the evidence mandating an affirmative finding of "intentional arson."

**Sentencing**

The defendant argues that his personal circumstances make his 10-year sentence unconstitutional.

La. R.S. 14:52(B) establishes the penalty for simple arson:

> Whoever commits the crime of simple arson, where the
> damage done amounts to five hundred dollars or more,

8

shall be fined not more than fifteen thousand dollars and imprisoned at hard labor for not more than fifteen years. (Emphasis added.)

It bears mentioning that the defendant did not assert a lack of fitness to stand trial nor did he plead not guilty by reason of insanity. Furthermore, he did not mention his schizophrenia diagnosis or childhood abuse during his presentation at sentencing. These matters were revealed to the trial court for the first time as allegations in the defendant's motion to reconsider sentence.

The trial court noted the defendant's criminal history at sentencing. In unrelated matters, the defendant: (1) pled guilty to misdemeanor possession of stolen things in July 2021 and was given a suspended sentence (that was later revoked); (2) pled guilty to aggravated flight from an officer in September 2022, and was given a suspended sentence (that was later revoked); and (3) pled guilty to domestic abuse child endangerment in May 2023, and sentenced to 18 months of incarceration at hard labor.

La. Const. art. I, § 20 provides: "No law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment."

A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166.

The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Bell*, *supra*.

However, even a sentence at the absolute minimum of the statutory range may be constitutionally excessive under the circumstances of a given case. *State v. Dorthey*, *supra*.

As shown above, the sentencing range for La. R.S. 14:52 is 0 to 15 years. Thus, the defendant received only 2/3 of the maximum possible sentence. He contends this is unconstitutionally cruel, harsh, and/or unusual because of his personal circumstances, namely, his positive work history, his back injuries, his diagnosis of paranoid schizophrenia, his abuse as a child, and the fact that he is a father of a two-year-old and expecting another child. The defendant argues that these circumstances "[uniquely] combine…to make his current sentence unconstitutionally harsh and excessive." These facts, according to the defendant, "certainly establish that Mr. McCray is not likely to engage in further criminal conduct, as long as he receives proper treatment and supervision."

The trial court did not abuse its discretion in sentencing the defendant to 10 years of incarceration, especially in light of the defendant's criminal history. The sentence is closer to the middle of the sentencing range than it is to the maximum. The defendant having an injured back is irrelevant. His work history now includes burglary and arson of his workplace – certainly

10

this is not auspicious for his future employment. The fact that the defendant committed burglary and arson as the father of a two-year old and while expecting another child speaks quite poorly of his decision-making. As a person diagnosed with paranoid schizophrenia, it is the defendant's responsibility to do what is medically necessary to treat his condition. He has not alleged that his schizophrenia caused him to commit this crime, or that he was not properly medicated before or during the commission of this crime. As to the defendant having been abused as a child, we, as a society, owe him sympathy and assistance in his recovery but not license to commit arson with reduced punishment. The defendant's sentence is not excessive.

## CONCLUSION

The defendant's conviction and sentences are **AFFIRMED**.

**AFFIRMED.**

11